3 20 0 4 6 8 Stephen Glancy et al at police versus Joel Brown et al appellants good morning Mr. Buck um if you may proceed thank you may it please the court my name is Stephen Buck I represent the defendants appellants in this case uh to begin this action is it's an the plaintiffs are seeking to recover under three separate alleged fee-sharing agreements that are attached to the complaint as exhibits a b and c the complaint sounds in five counts four of the counts counts one two four and five all are breach of contract arising from the various contracts attached count two combines breach of contract and breach of fiduciary duty claims and count three uh alleges tortuous interference with contract claim the upon the filing the plaintiffs did obtain a temporary restraining order without notice that was dissolved for failure to comply with the statute uh the plaintiffs then proceeded to seek preliminary injunctive relief uh at the time of the hearing on the motion for preliminary injunction defendants had not filed an answer to the complaint instead they filed a motion to which uh the complaint and then a response to the motion for preliminary injunction which incorporated the arguments in the motion to dismiss and the motion dismissed was under 26 19.1 and essentially was arguing that as a matter of law particularly with respect to the contract counts the plaintiffs could not state a cause of action legally because of the failure of the agreements the alleged free sharing agreements to comply with rule 1.5 of the rules of professional conduct and those and and that would be under both Missouri and Illinois as well so under either states rules of professional conduct their rule 1.5 uh the the complaint the contracts are unenforceable defendants argued uh before the courts uh the trial court that no evidentiary hearing was necessary based upon the legal insufficiency of the complaint and urged the court to address that matter first the court disregarded um that and indicated that it had set aside time for an evidentiary hearing that time was valuable its docket was full and it was going to proceed for an evidentiary hearing uh on the uh the motion the court also i would point out when you look at the october 8th 2020 order that was entered granting the motion for preliminary injunction the court did indicate at page three that i noted that the defendants offered no evidence presented no witnesses of their own and didn't even cross-examine all of the witnesses so ultimately what the court based its ruling on was a one-sided presentation of the evidence uh proceeding to an evidentiary hearing when one was not appropriate or warranted because there was no material issues of fact and what was being challenged was the legal sufficiency of the complaint in the first instance so the court i believe the first error of the court was abusing its discretion proceeding to an evidentiary hearing when one was not warranted going beyond that the cases that you cited um almost always the opposite of you failing to hold an evidentiary hearing when one is requested rather than um you know holding one when you say it wasn't warranted but you know if we're you know if the court is trying to get more facts um is it you know the cases that you rely on seem to you know point us you know stand for the opposite proposition we should be getting more information not less well and i understand but when you read the cases what the cases discuss is that what the evidentiary hearing is warranted when there becomes or there is a question a material question of fact on uh the issues raised in the complaint and when no answer was filed which we did not in this case and we filed a 2619.1 motion uh pointing out that the alleged tree sharing agreements failed to comply with the legal issue so uh an evidentiary hearing on factual issues was not necessary and the legal issue should have been addressed pre prior to any issues of fact moving on um to the other the points uh of error of the court essentially the court then based upon this uh one-sided presentation of the evidence made findings the required findings for uh issuing a preliminary injunction order uh and and those again uh are erroneous uh based upon uh again the lack of legal sufficiency of the complaint first you know and finding that there was a clear ascertainable right in need of protection fundamentally going back again to the complaint when you have four of the five counts asserting alleged breach of contract based upon these fee sharing agreements and the fact that the fee sharing agreements themselves did not comply with rule 1.5 e1 and e2 under illinois's rules of professional conduct and likewise didn't comply with rule 1.5 under missouri rules of professional conduct in breaking that down when you look at it there's two plaintiffs there was three fee sharing agreements attached to the complaint exhibit a was an august 2014 agreement exhibit b was a march of 2016 agreements and exhibit c was a september of 2017 agreement and as to plaintiff o'haver will take her first when you look at all three of the contracts she never signed the contract she undertook no obligations under that contract she wasn't a party to it but she was listed as a referral attorney in each of the contracts looking at rule 1.5 e1 in illinois the rule says that when you're going to have a division of fees among lawyers who are not in the same firm which was the situation here each attorney must assume joint financial responsibility for the underlying litigation in this case the missouri wrongful death suit there was not a single allegation in the complaint that plaintiff o'haver assumed joint financial responsibility at the evidentiary hearing itself plaintiff o'haver never testified that she assumed joint financial responsibility at most that she said the closest she got was sort of a vague answer to a question posed to her by her counsel as to whether she understood there were certain legal obligations that stemmed from her being named as a referring attorney and she answered yes but there was no testimony as to what she understood or what those legal obligations may or may not have been and certainly there was no assumption of joint responsibility in the case and that in and of itself is fatal to the claim of enforcing the fee sharing agreement under rule 1.5 e1 when you look at similarly the claims of plaintiff glancy under the three contracts um under illinois law i'd first point out we had argued in our brief and ultimately at page 28 of the appellee's brief they conceded that plaintiff glancy in fact has no claim for breach of contract with regard to contracts b and c the march 16 and the september 17 agreements he was not a party he didn't sign those he wasn't even referenced or named in the agreements so those agreements are looking only for breach of contract to the first contract the august of 2014 agreements and that agreement was ultimately again as conceded by the appellees in their brief at page 28 uh that the clients uh terminated that agreement it wasn't at will agreement it was terminated by the client and as pointed out by canal and hail versus tobin and the related cases cited in the briefs uh the client as a matter of public policy has an absolute right to terminate an agreement and to select their lawyer and upon termination the contract is terminated the contingency term is terminated as well in the plaintiff in this case is left with a recovery under quantum merowit and not for breach of contract based upon the termination so plaintiff glancy doesn't have any claims with respect to the contracts either as a matter of law other than a quantum merowit claim for services performed at the point of termination i want to shift next to rule 1.5e2 which discusses that the fee sharing agreement has to be confirmed in writing by the client which includes the share each attorney will receive and again these alleged fee agreements violate rule 1.5e2 again under both missouri and illinois law and specifically uh when you look first at the uh exhibit a the august 2014 agreements that agreement provides that there would be a referral and a co-counsel fee which would be 50 percent of any recovery and that's 50 percent of the recovery would be paid to plaintiff glancy and plaintiff o'haver but there was no distinction drawn in the agreement as to what amount plaintiff glancy would receive of that 50 percent versus what amount plaintiff o'haver would receive and that in and of itself violates rule 1.5e2 and i would direct the court to an opinion that was issued on december 23rd 2020 after the briefing in this case was complete and it was a situation involving two attorneys who had represented a party in a trial they both participated in the trial and their agreement with the client was that the two attorneys derose and carone would receive 40 percent of any recovery in the case they won the case and then there became a dispute between the two attorneys as because the contract only basically spoke to collectively the attorneys would recover 40 percent without identifying how much each would get that it violated rule 1.5e2 in that case and i have a site here let me find it it is 220 ill app first 191 155 dash u it is an unpublished opinion but i would urge the court to review it because it does also contain a discussion of a number of other published opinions in illinois that address rule 1.5e2 with a similar result one of those is the case of daniels versus ai incorporation which was also cited in our briefs and that was a situation where three law firms agreed to represent some clients and agreed to how much each firm would take in the 15 just a collective note and again that was held held to violate 1.5e2 because it didn't identify which attorney or what share each attorney was going to be taking and that's the situation we have here with the first contract that just allocated 50 of the recovery to plaintiffs o'haver and glancy when you look at the contracts that are complained again plaintiff glancy is conceded there's no claims that he has under those contracts and with respect to plaintiff o'haver she is listed as a referring attorney but she is only uh all the contracts basically says that that there's authorization to pay her a referral fee in an amount to be determined at the conclusion of the matter so again it does not identify what or what amount plaintiff o'haver was to receive and therefore violates 1.5e2 now the court in its ruling did uh point out and make the attempted to make a distinction that's a distinction essentially without any merit but argued that the reason that the percentages or the identification of how much each attorney would share was the fault of defendant brown because he prepared the both the rule and the case law in illinois and i would point to the case of mcnaughton versus faf thompson versus heider and daniel versus and corporation again all of which said that the referring attorney has every much and every bit as an obligation under rule 1.5e to to or well to ensure compliance with rule 1.5 um and so the attorney and particularly in the the attorney tried to say well it was fast fault that the rule wasn't complied within the written agreement and the court said no you've got every bit as much an obligation as a licensed attorney to ensure that the agreement that you're going to seek to recover a fee under complies with the rules of professional conduct receiving attorney you can't pass the blame uh and if the contract's unenforceable that the responsibility for that falls on all parties and i see i'm i'm heading into the home stretch here so i'm going to kind of skip ahead very summarily address the irreparable harm the adequate remedy at law uh points and in those situations again there was no evidence put of any irreparable harm there was fear there was speculation that defendant could do this or may move money or could move out of state or could retire but no actual facts or evidence of any specific harm the court also noted in its order specifically that this was an action for money damages there was an adequate remedy that this was not ongoing harm um and even that there was this the order itself sought an equitable attachment which is prohibited in illinois the court did and but it's a specific fund attachment isn't prohibited the specific here and again the judge actually in his analysis basically created a misconduct exception to the rule against sexual equitable attachments there's no support there's no authority for that in illinois and in this situation the um plaintiffs their argument was they had an interest in the specific funds because of their breach of contract claim but as shown by the case of i don't know if i can finish the all right the the hensley versus polty corporation the grower service corporation versus brown and the moss versus cohen associates all discussed that issue of whether the plaintiff and the plaintiffs have to show a specific interest in the funds and dispute in the case and in each of the hensley grower service and um moss cases the court found that their only stated interest in the funds was a breach of contract claim uh that they said they were entitled to those funds because they the contract had been breached the court said that wasn't sufficient it didn't give them a specific interest it gave them a contract claim but that wasn't enough to invoke the specific fund exception and the specific fund exception of course noted is typically used in the case of inheritances or insurance fees things of that thank you your honors christopher ryan for the viapolese uh and plaintiffs uh jane o'haver and stephen glancy first of all i just want to point out i know everybody knows this but the council did not address the issue of abuse of discretion i mean the court is entitled to a lot of discretion on these facts and this sounded very much like an argument on summary judgment saying i didn't like the way the court dealt with the fact but putting that aside on the evidentiary hearing um i'd like the court to consider the fact that in the motion to dismiss the tro mr brown attached a 12 page affidavit which note for note disputed the allegations in the underlying complaint they then attended a hearing where we agreed to temporarily escrow the money while we resolved the petition the tr the motion against the tro and the petition for preliminary injunction at that hearing the court told us to exchange all exhibits we were going to use at that hearing and in fact mr brown attached something like 138 pages of emails and texts which he reserved the right to use at the hearing we sent them 40 pages of emails and other documents which we did use at the hearing so this wasn't a surprise and if you go to the hearing notes or the actual hearing itself and if you look at we talked a little bit in the briefs about uh mr mr brown saying all right at one point but if you go past that in the about 323 through 332 you will see that the court specifically said the hearing was only on the pleadings as to the tro but on the preliminary petition for preliminary injunction he was going to hear evidence and both parties could present evidence and mr brown said all right and he proceeded and we we cited curly for the proposition that once you do that you have waived your objection to the taking of a hearing you can't participate in the hearing and they did cross-examine they did submit evidence oh and by the way they submitted five exhibits with their tro which were the missouri pleadings and those things and he cited to those both in the underlying case and in the briefs in this case so he's citing to evidence he's put in but saying we shouldn't have had an evidentiary hearing i submit that the affidavit his cooperation in the pleadings the exchange of exhibits and his participation in hearing including cross-examination of multiple witnesses and use of exhibits with those witnesses is a waiver of any objection to the proceeding going forward and you will not find anywhere in the transcript his objection to moving forward on the hearing he did not preserve that in any way that i see with regard to rule 1.5 um i keep hearing about financial responsibility and there has to be an agreement but if you look at stormant which i think started this said that financial responsibility means joint responsibility for malpractice coverage and ferris made it clear that that did not have to be in writing did not under rule 1.5 did not have to be in writing did not require the client's acceptance it just is that is if you are the referring attorney listed on a contract you are jointly responsible in malpractice jane o'haver did not have to testify that she understood that um and i pointed out that under his theory if jane said i didn't realize that um his argument is she shouldn't be liable in malpractice if mr brown blew the statute of limitations in missouri that's patently false under illinois law you would be liable for malpractice if the attorney to whom you refer the case committed malpractice so the financial responsibility argument is is i hate to say it just specious it's not it's not based on supreme court rulings with respect to the attorney's fee argument it's not just the contract the court relied on emails from the client and as the court noted writing under the supreme court rules can be virtually any written or recordable media we introduced a number of emails between brown and schroeder the client at the time not only talking about exhibit a in fact in her decision to cancel glancy's interest she outlines in detail her agreement and assessment of the original contract how it is divided up between the parties and testified that brown told her at the time she signed the contract and glancy said the same thing that the fee was going to be one-third to o'haver 50 to brown and the remainder which was roughly 17 would go to glancy and so as you see in her email she's using those numbers and saying if the referring attorney is 10 and it comes out of the glancy o'haver share steve's only in there for seven percent and i don't think we need him so there's there's there's writing there where their clients agreeing to the referral fees in a then we go on to the client talking with brown about how about exhibit b and how they're going to enter into that and he flat out tells her i recommend a third but i don't normally put it in the contract which is exactly opposite of his position here and this is a theme here he says one thing to the client and then does something different or says something different he essentially tells the client i recommend a third and she agrees and says i would not have signed the contract if if he hadn't told me in writing that the fee was going to be a third now mr brown is correct that when the court applied those facts he found that rule 1.5 was met but he is saying there's a question of fact as to whether 1.5 was met and i think that's all he needs to do for the petition on a preliminary injunctive relief we can move forward on the complaint quick note on that yes the complaint was dismissed but it was not dismissed on substantive grounds the transcript makes it clear it was dismissed on 603 grounds for combining parties he asked us to untangle the parties that's not in the record but it has been done um mr brown has filed a response a motion to dismiss that and we have responded and that is still in suit so the case is the underlying case is still proceeding with respect to irreparable harm um i want to address that in two ways as the as you note in the court decision he looked at a couple different factors he he he correctly cited the fact that equitable attachment was not favored in illinois but he pointed out that in attorney's fees cases it was very common to treat that as an attorney as a common fund either through an attorney lien or other actions and we've cited cases of the court where attorney's fees were escrowed and and it's our feeling that this is these are the correct set of facts for a specific fund exception now i've been looking at these cases and noting that where the court has found a specific fund it does not seem the courts don't seem to address equitable remedy or um other other means of recovering they seem to say where we have a specific fund related to a specific action here the attorney's fees generated by the three contracts the case the case underlying those three contracts that that money um they typically don't address those two factors but the court here went on to address brown's conduct it is not just plaintiff's fear that he might do something with it the court pointed out and i don't i believe this is a case of first impression at least in my 40 years i've never seen it where you have a co-counsel going behind the other counsel's back and telling the client that his co-counsel is impaired by alcohol and drugs to the point where he is committing malpractice losing cases and clients are firing the firm these allegations were false and we submitted evidence to to show that some of these allegations were clearly false and testimony to that but the client testified that is primarily what she relied on in terminating glancy's interest now i suggested the court that as this court found somewhere in there you can say there's a breach of fiduciary duty or tortious interference when you slander a colleague falsely to get to get a client to fire them he then goes on to basically send jano he talks about uh jane o'haver having an obligation to make sure exhibits b and c were complied with one five well we have emails where she asked for those contracts and he refuses to send them saying you are not an attorney on this case he tells her that he's she's not a referring attorney at one point even though she clearly is he later says under referring attorney which is correct but under illinois rules you can and he says you can't by the way he also told the client that the original contract they violated rule 1.5 because he and glancy weren't doing equal work which is an incorrect statement of the law and he sent the client rule 1.5 which i'm not sure what the intent was there but the client didn't quite understand what it was for going beyond that on multiple occasions he keeps telling jane that she's not referring o'haver she's not the referring attorney but yet he lists her as the referring attorney and b telling the client it's going to be a third but we'll decide that at the end of the case and she agrees to that and then basically doesn't communicate with anybody and he told the court that he found out from missouri that that it was barred under missouri law but he didn't tell the client didn't tell the client he needed to amend the complaint didn't tell the client and then goes on after he's uh applied to missouri it's not clear exactly when that happened he has a third contract exhibit c signed that not only lists jane o'haver as a referring attorney but incorporates all of contract b into c together listing her as a referring attorney and then as the case proceeds to settlement he doesn't communicate with anyone even though he's told o'haver in an email will decide the referral fee at the end and the contracts seem to imply the referral fee to get within the end at the end and the court found that unless the client happenstance asked him about the referral fee and he said no it's barred under missouri law i can't pay it and that client then called jane o'haver he would have distributed the funds the funds were there is reason the court basically found that but for that happenstance conversation we would not have been able to file this case because essentially it would be after the fact and i think the court cites to carriageway in other cases which says you know you really shouldn't use these things to undo something you should preserve the status quo and so we filed this action because the money was in the trust account because it was still a segregated fund and this was the only time we could do it and and when you talk about irreparable harm i think you can't ignore the amount of the fee involved in the 45 percent of the fee that we're talking about is about three million dollars and that in this day and age money can be moved with the touch of a so i think the court properly found that if you were strictly applying irreparable harm or inadequate remedy that there was enough indication that of brown's misconduct and his i mean the court didn't find him credible i mean at least at least he said his testimony was problematic and in every turn he found the other witnesses more credible on specific points than brown that's very unusual as well and i think you have to give weight to the courts he heard the testimony of the parties he weighed that testimony and he he did not find brown as credible as the other witnesses but i think again going back to specific exception i think when you have a specific exception those other categories are not as critical to the finding that is all you're doing is preserving the status quo by preserving the fund i do want to mention the integration clause because mr brown did not but he may in rebuttal the integration clause yes they can be used in legal matters but as a practical matter the cases he cites on integration all involve business or other types of cases i believe that that brown is attempting to argue in this case that because there was an integration clause even though the supreme court says fee agreements can be outside the contract that is the percentage of fee that each attorney is going to get can be outside the contract that the integration clause bars the client from raising that fact or bars anyone from raising the fact that the client agreed in writing outside of the contract i think that is contrary to the rules of professional conduct i think that's contrary to the spirit of 1.5 and the letter of 1.5 and i don't believe you can use integration clauses in that manner i also believe that as he argues 50 of the fee in contract a is is amorphous brown testified it was undifferentiated that is everyone had a right to 50 of the case from that side i believe that the client's email is permissive to explain that 50 um and and that those are ambiguous also as i said joint responsibility was in exhibit a that was listed and yet he argued we couldn't use anything else to explain what they meant by joint responsibility as i've said i don't even think that was necessary but those ambiguities allowed it in with respect to exhibit b again i think if the client agrees to a one-third fee in an email with the attorney that is sufficient under um e2 or e2 and as a practical matter you can't use an integration clause to ban that because that's what the supreme court has said you can do the other thing and maybe mr buck will identify this but i'm not sure what legal opinion he is saying the court uh aired in uh i didn't see much the court said were mixed questions of law and fact and the court found certain findings of fact based on the evidence he heard but i'm not sure what law uh what legal opinion he's saying is broken here but i believe the court correctly applied the law in this case and the hearing uh the opinion of the court should be upheld thank you mr ryan counsel i do have a question i'm sorry just um i have a trouble stepping over the threshold here and maybe you can help me out with the timing of the hearing on the motion to dismiss and the hearing on the preliminary injunction to me it seems like the judge put the cart before the horse here because if the complaint fails to say the cause of action how can you survive the likelihood of success prong for preliminary injunctive relief so can you help me with that yes um i think we referenced this in the brief but the procedural history in fact this is a good point i moved to continue the hearing so that i could file my response to the 2615 and 2619 motions and we could hear those together and mr buck objected to that continuance and the court denied my motion to continue and we proceeded and what the court did was it said to mr buck you can you can thread your 615 and 619 motion into the probability of sustaining a cause of action now i understand what the court is saying but i do not believe you have to have pleadings i mean the nature of these petitions are that you probably don't have the underlying complaint completely resolved at the time you have a what the court we don't have an underlying complaint here ultimately in preparing for oral arguments here i read the transcripts and i see that the judge did dismiss the complaint and gave leave to refile so none of the counts survived did they well they didn't survive in the sense that the court asked me to reorganize the complaint and that was done um to be honest with you i i believe that the court and i think the parties have been briefing the complaint that eventually was dismissed with leave to replead but the grab amendment of the amended complaint is the same as the original one that is we believe there was a breach of fiduciary duty in the contract there was tortious interference with contract uh that there was a violation of good faith and fair dealing so the facts of the complaint are the same and they are the same in but if if that's an issue for the court i would gladly tender the amended complaint as an additional portion of the record for the court to consider because the underlying case is still moving on well i appreciate your input that helps me somewhat in understanding the order of these two hearings so i appreciate your input thank you thank you thank you mr ryan mr buck for a rebuttal thank you um there's a number of things i want to touch on first on the procedural history of this you know i i don't believe the statement that i objected to uh the continuance uh is is an accurate statement my recollection is that i in fact set the hearing for the motion to dismiss on the same morning as the hearing on the preliminary injunction had been scheduled and mr ryan objected to that um and the court ultimately determined that because mr ryan had not yet responded to the motion to dismiss that uh that in part in the fact that the court had set aside time uh for an evidentiary hearing that's why the court decided to proceed um i want to touch on also the issue of um rule 1.5 i mean that's the that is the legal the question i mean these fee sharing agreements violate rule 1.5 e1 and e2 and i have a question for you about that in your original argument you said that you know both attorneys are responsible for making sure that there's an accurate um fee splitting you know arrangement is set forth in the contract and both in exhibit b and c the contracts that were prepared only by mr buck they don't even include a signature line for o'haver or for glancy or for anyone so how do you square that when you know you you are um now preparing them and not having any input i i'm assuming they didn't sign them they didn't even see them so how can they be required to have you know the the same responsibility to you know follow the rule which you must think can't have any terms outside of the four corners of the document well actually the case in that regard is similar to mcnaughton versus faf which is one of the cases that hold that the obligation is on both the referral and receiving attorney and mcnaughton versus faf um but this document both b and c were they ever even presented to o'haver there's no signature line for them and there was no signature line on on the first one either exhibit a but ultimately the testimony the testimony at the i'm sorry stephen glancy signs but not jane o'haver on that but on both of it but i mean so you're you're saying that you never i mean there was never an opportunity for those to be presented or for those to be reviewed with respect to exhibit a those they were in fact reviewed and even with respect to b and c as well and the testimony that came out at the preliminary injunction hearing was that in fact the client gave the contract to jane o'haver and that she had it shortly after it was prepared as well and again i would go back to mcnaughton versus faf in that situation mcnaughton made the referral to bruce faf uh but bruce faf and in reaching the agreement and putting it in writing with the client didn't even mention the referral at all in the underlying contract so there was no mention of mcnaughton in the referral and then when the mcnaughton found out later through other means that the case had settled and contacted faf to ask about his referral fee and ultimately faf apologized for the oversight but the court ultimately ruled that the fact that it wasn't included in the agreement and it wasn't identified the referral itself in the fee-sharing agreement that that was fatal to any claim mcnaughton had even though again in that situation mcnaughton didn't have the agreement until after the case was settled mcnaughton uh didn't know that his name had been left out of the agreement the court nonetheless said if you're going to enforce uh fee-sharing agreements you you have an equal obligation to make sure that the underlying agreement complies with rule 1.5 e1 and e2 and the the referring attorney could have entered into a separate arrangement with the client in that regard as well to make sure that there was a full disclosure of the fee-sharing even to the extent that the other contract did not so uh again the obligation falls on both parties so it doesn't necessarily have to be in the same document correct the um through separate evidence correct and when you read a lot of these cases there are multiple documents and that even touches on the fact that one point made and i want to address that real quick the argument that somehow even on e1 the assumption of joint financial responsibility was automatic that violates directly contrary to the opinion in ferris uh by the illinois supreme court and basically the court said there's three things that must happen in a progression in an orderly fashion the first of which is there must be an assumption of joint responsibility it doesn't have to be in writing so it doesn't have to be in that contract but there still must nonetheless be that assumption of joint responsibility and that is specifically out of ferris case which i cited in the briefs and again i see i'm out of time i i had one question before uh you finish mr buck do you agree with mr ryan's amend any of the factual allegations but merely reassorted the parties in separate counts no i don't agree with that and ultimately that complaint was dismissed in its entirety we argued under 2619.1 that it was legally insufficient because the underlying agreements don't comply with rule 1.5 um he did replete there's many different allegations there were to dismiss those again under 2619.1 but there is ultimately the court the court issued its injunction order on october 8th and said the court believed it unlikely that it would dismiss all of the counts of the complaint and specifically noted in the order that if it did dismiss all if it had intended to dismiss all of the counts that it wouldn't issue the preliminary injunction but about a month later on november 12th the court did just that and dismissed all of the counts mr ryan wants to argue that it was just a resorting and a reorganization i do not believe that was the intent of the court the judge said he wanted separate counts for each party so he could assess the validity of those counts as to each of the individual parties and would be easier to do so but that isn't an indication that i just want to reorder and this is going to survive i was expressly given the right to seek to move to dismiss again i have under the same grounds and that is pending so it isn't an identical complaint it isn't just the separating of the parties there is more there are more allegations to it and there are more counts and theories of recovery in it as well and isn't that exactly why um you have the hearing on the preliminary injunction make that decision prior to any hearing on the merits which would include uh you know a dismissal with prejudice and and you know getting eliminating some parties and not others exactly and in fact that that point is driven home by the case of strata marketing versus murphy which i cited in the reply brief and that says even and again i'm not going to get into it because we're out of time but i disagree disagree with the statement that i somehow waived the objection i think when you read the transcript that becomes clear but nonetheless even to the stand on the motion to dismiss that's not waiving the argument is to the attack on the legal sufficiency of the complaint and that is established in the strata marketing versus murphy case that the court there said any time a court issues a preliminary injunction that the appellant has the absolute right to attack uh and have the appellate court review whether the complaint was sufficient in and of itself to support uh the injunction in the state legal cause of action and so regardless of anything else once the court issued that preliminary injunction we had the right to challenge the legal sufficiency of it it goes back to our point that the court should have addressed this at the outset instead of proceeding to an evidentiary hearing it should have addressed the legal sufficiency of it but even still once it issued the injunction that's still an issue before the appellate court okay thank you mr buck thank you both for your arguments here today this matter will be taken under advisement and the written decision will be issued to you as soon as possible and with that we will stand in a recess until 10 30